## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLORADO

Civil Action No.

DANIEL EGTS and LINDA EGTS, Individually and on Behalf of All Others Similarly Situated,

      Plaintiffs,

v.

OPPENHEIMERFUNDS, INC.,
OPPENHEIMER MULTI-STATE MUNICIPAL TRUST,
OPPENHEIMER PENNSYLVANIA MUNICIPAL FUND,
CLAYTON K. YEUTTER,
BRIAN F. WRUBLE,
JOHN V. MURPHY,
BRIAN W. WIXTED,
DAVID K. DOWNES,
MATTHEW P. FINK,
ROBERT G. GALLI,
PHILLIP A. GRIFFITHS,
MARY F. MILLER,
JOEL W. MOTLEY,
KENNETH A. RANDALL,
RUSSELL S. REYNOLDS, JR.,
JOSEPH M. WIKLER,
PETER I. WOLD,
SCOTT S. COTTIER,
RONALD H. FIELDING,
DANIEL G. LOUGHRAN,
TROY E. WILLIS and
OPPENHEIMERFUNDS DISTRIBUTOR, INC.,

      Defendants.

---

## PLAINTIFFS' CLASS ACTION COMPLAINT FOR VIOLATION OF THE FEDERAL SECURITIES LAWS AND DEMAND FOR JURY TRIAL

## NATURE OF THE ACTION

1.      This is a class action on behalf of all persons or entities who purchased or held shares of the Oppenheimer Pennsylvania Municipal Fund (the "Pennsylvania Fund" or the "Fund") offered by OppenheimerFunds, Inc. ("OppenheimerFunds") during the period from November 28, 2005 to November 28, 2008, inclusive (the "Class Period"), and who were damaged thereby.  The action pursues remedies for purchasers and holders of the Pennsylvania Fund, including in connection with its November 28, 2005, September 27, 2006, March 5, 2007 and November 28, 2007 offerings (the "Offerings"), seeking to pursue remedies under the Securities Act of 1933 (the "1933 Act") and the Investment Company Act of 1940 (the "1940 Act").

2.      The Pennsylvania Fund, a series of the Oppenheimer Multi-State Municipal Trust (the "Multi-State Trust" or the "Trust"), is an open-end, non-diversified management investment company with an unlimited number of authorized shares of beneficial interest.  The Trust was organized as a Massachusetts business trust in 1989.  In 1993 it was reorganized to be a multi-series business trust.  The Fund was added as a separate series of the Trust in 1994.

3.      The Fund invests primarily in Pennsylvania municipal securities that pay interest exempt from federal and Pennsylvania individual income taxes.  These primarily include municipal bonds (which are long-term obligations), municipal notes (short-term obligations), and interests in municipal leases.

4.      Due to defendants' positive, but false, statements, investors purchased and/or continued to hold shares in the Fund.

5.      While the Pennsylvania Fund promoted itself as focusing on capital preservation and being safer than a high yield municipal bond fund, unbeknownst to investors, the Fund altered its investment style and began to significantly increase its risk in the hopes of seeking higher returns.

6.      Municipal securities are fixed-income securities primarily issued by states, cities, counties and other governmental entities to finance the development of local communities.  The interest received from most municipal bonds is exempt from federal, state or local income taxes in the municipalities where the bonds are issued.  Municipal securities are considered to be either "general obligations" (*i.e.*, secured by the issuer's pledge of its full faith and credit and taxing power) or "revenue obligations" (*i.e.*, secured by revenue derived from a particular facility or class of facilities or revenue source).  Revenue obligations tend to be riskier.

7.      The Fund concentrated its portfolio in the riskier revenue obligations type of securities such as Tobacco Bonds, Land Secured or "Dirt Bonds" and Airport Bonds.  The Fund further engaged in risky derivative transactions by purchasing Inverse Floaters.  Inverse Floaters are debt instruments whose coupon rate has an inverse relationship to short-term interest rates.  The Fund concentrated its portfolio in these risky investments.

8.      The Fund further took on additional unnecessary risks by significantly increasing its leverage exposure.  The Pennsylvania Fund leveraged its net assets by borrowing money using the Fund's assets as collateral and then using the proceeds to pursue high risk investments.  The use of leverage greatly increases an entity's potential loss as the Fund is exposed to loss on its new investments in addition to loss associated with its original assets.  Moreover, the Fund's use of off-balance-sheet vehicles to create leverage helped to conceal from investors the Pennsylvania Fund's full exposure to risky investments.  Further leverage created additional risk as the Fund was using

short-term borrowings to fund its purchase of long-term bonds. This caused pressure on the Fund as the credit markets tightened up and the Fund was unable to roll over its short-term debt.

9.      Defendants concealed that the Pennsylvania Fund had increased its exposure in these excessively risky bets in the hopes of higher returns, such that investors remained unaware of these additional risk exposures.

10.      Beginning in February 2008, the Pennsylvania Fund's shares declined in tandem with other municipal bond fund shares as the auction-rate securities market, which had been an important source of debt financing for municipal bond funds, froze, thus exposing the poor underlying fundamentals of the municipal bond funds' risk management practices. As a result of these concerns, the Fund's shares began to slide.

11.      Then, beginning in late September 2008 and continuing through February 2009, the Fund began to acknowledge the serious deterioration in its portfolio. As a result of these disclosures, the price of the Fund's shares collapsed. Prior to any negative disclosures, the Pennsylvania Fund traded within a narrow trading band. Class A shares of the Fund traded in the $12 to $13 range for years. In contrast, by mid-October 2008, the Class A shares were trading in the $8 to $9 per share range, trading as low as $7.42 per share on December 15, 2008.

12.      The true facts which were omitted from the Registration Statements/Prospectuses issued in connection with the Offerings were as follows:

(a)      The Fund was no longer adhering to its objective of preserving capital, but in an effort to achieve greater yields, was pursuing riskier instruments;

(b)      The Fund was no longer adhering to its no-concentration policy;

(c)     The extent of the Fund's liquidity risk due to the illiquid nature of a large portion of the Fund's portfolios, including the Fund's investment in Tobacco and Dirt Bonds, was concealed;

(d)     The extent to which the Fund's portfolio contained unrated securities was concealed;

(e)     The Fund's internal controls were inadequate to prevent defendants from taking on excessive risk or to prevent them from improperly evaluating the credit quality of unrated securities;

(f)     The extent of the Fund's risk exposure to derivatives and other high-risk instruments, such as Inverse Floaters, was concealed; and

(g)     The extent of the Fund's leverage exposure was misstated.

## JURISDICTION AND VENUE

13.     The claims asserted herein arise under and pursuant to §§11, 12(a)(2) and 15 of the 1933 Act and §13(a) of the 1940 Act.

14.     This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. §1331, §22 of the 1933 Act and §44 of the 1940 Act.

15.     Venue is proper in this District pursuant to 28 U.S.C. §1391(b), because many of the acts and practices complained of herein occurred in substantial part in this District.

16.     In connection with the acts alleged in this complaint, defendants, directly or indirectly, used the means and instrumentalities of interstate commerce, including, but not limited to, the mails, interstate telephone communications and the facilities of the national securities markets.

**PARTIES**

17.    Plaintiffs Daniel Egts and Linda Egts acquired shares of the Fund during the Class Period as set forth in the accompanying certification, and have been damaged thereby.

18.    Defendant OppenheimerFunds is one of the largest asset management companies in the United States.  OppenheimerFunds offers products and services to individuals, corporations and institutions, including mutual funds, separately managed accounts, investment management for institutions, hedge fund products, qualified retirement plans and subadvisory investment-management services.  OppenheimerFunds acts as the Fund's investment manager and is primarily responsible for selecting the Fund's investments and handling its day-to-day operations.

19.    Defendant Multi-State Trust is an open-end management investment company registered under the 1940 Act.  The Multi-State Trust and its Trustees were responsible for ensuring that the Fund complies with its stated objectives.  The Multi-State Trust was the registrant for the Offerings.

20.    Defendant Pennsylvania Fund is a separate series of defendant Multi-State Trust.  The Fund primarily invests in Pennsylvania municipal securities.  The Fund's investment objective is to seek as high a level of current interest income exempt from federal and Pennsylvania personal income taxes for individual investors as is consistent with preservation of capital.  The Fund's classes are as follows:

Class A Shares
Class B Shares
Class C Shares

21.     Defendant Clayton K. Yeutter ("Yeutter") was, at relevant times, Chairman of the Board of Trustees for the Multi-State Trust.  Defendant Yeutter signed or authorized the signing of the November 2005 and September 2006 N-1A Registration Statements.

22.     Defendant Brian F. Wruble ("Wruble") is, and at times relevant was, a trustee and Chairman of the Board of Trustees for the Multi-State Trust.  Defendant Wruble signed or authorized the signing of the September 2006, March 2007 and November 2007 N-1A Registration Statements.

23.     John V. Murphy ("Murphy") was, at relevant times, President, Principle Executive Officer and trustee of the Multi-State Trust.  Defendant Murphy signed or authorized the signing of the November 2005, September 2006, March 2007 and November 2007 N-1A Registration Statements.

24.     Defendant Brian W. Wixted ("Wixted") is, and at all relevant times was, Treasurer and Principal Financial and Accounting Officer of the Multi-State Trust.  Defendant Wixted signed or authorized the signing of the November 2005, September 2006, March 2007 and November 2007 N-1A Registration Statements.

25.     Defendant David K. Downes ("Downes") is, and at relevant times was, a trustee of the Multi-State Trust.  Defendant Downes signed or authorized the signing of the November 2007 N-1A Registration Statement.

26.     Defendant Matthew P. Fink ("Fink") is, and at relevant times was, a trustee of the Multi-State Trust.  Defendant Fink signed or authorized the signing of the March 2007 and November 2007 N-1A Registration Statements.

27.     Defendant Robert G. Galli ("Galli") is, and at all relevant times was, a trustee of the Multi-State Trust.  Defendant Galli signed or authorized the signing of the November 2005, September 2006, March 2007 and November 2007 N-1A Registration Statements.

28.     Defendant Phillip A. Griffiths ("Griffiths") is, and at all relevant times was, a trustee of the Multi-State Trust.  Defendant Griffiths signed or authorized the signing of the November 2005, September 2006, March 2007 and November 2007 N-1A Registration Statements.

29.     Defendant Mary F. Miller ("Miller") is, and at relevant times was, a trustee of the Multi-State Trust.  Defendant Miller signed or authorized the signing of the March 2007 and November 2007 N-1A Registration Statements.

30.     Defendant Joel W. Motley (Motley") is, and at relevant times was, a trustee of the Multi-State Trust.  Defendant Motley signed or authorized the signing of the November 2005, September 2006, March 2007 and November 2007 N-1A Registration Statements.

31.     Defendant Kenneth A. Randall ("Randall") was, at all relevant times, a trustee of the Multi-State Trust.  Defendant Randall signed or authorized the signing of the November 2005, September 2006, March 2007 and November 2007 N-1A Registration Statements.

32.     Defendant Russell S. Reynolds, Jr. ("Reynolds") is, and at all relevant times was, a trustee of the Multi-State Trust.  Defendant Reynolds signed or authorized the signing of the November 2005, September 2006, March 2007 and November 2007 N-1A Registration Statements.

33.     Defendant Joseph M. Wikler ("Wikler") is, and at all relevant times was, a trustee of the Multi-State Trust.  Defendant Wikler signed or authorized the signing of the November 2005, September 2006, March 2007 and November 2007 N-1A Registration Statements.

34.     Defendant Peter I. Wold ("Wold') is, and at all relevant times was, a trustee of the Multi-State Trust.  Defendant Wold signed or authorized the signing of the November 2005, September 2006, March 2007 and November 2007 N-1A Registration Statements.

35.     Defendant Scott S. Cottier ("Cottier") was, at all relevant times, Senior Portfolio Manager and Vice President of the Fund.

36.     Defendant Ronald H. Fielding ("Fielding") was, at relevant times, Senior Portfolio Manager and Vice President of the Fund.

37.     Defendant Daniel G. Loughran ("Loughran") was, at all relevant times, Senior Portfolio Manager and Vice President of the Fund.

38.     Defendant Troy E. Willis ("Willis") was, at relevant times, Senior Portfolio Manager and Vice President of the Fund.

39.     The defendants referenced above in ¶¶21-38 are referred to herein as the "Individual Defendants."

40.     Defendant OppenheimerFunds Distributor, Inc. (the "Distributor") acted as the distributor of the Fund and is an affiliate of OppenheimerFunds.  The Distributor acted as an underwriter in the sale of the Fund in connection with the Offerings, helping to draft and disseminate the offering documents.

## CLASS ACTION ALLEGATIONS

41.     Plaintiffs bring this action as a class action pursuant to Federal Rule of Civil Procedure 23(a) and (b)(3) on behalf of a class consisting of all persons or entities who acquired shares of the Fund traceable to the false and misleading Registration Statements and Prospectuses for the Offerings and who were damaged thereby (the "Class").   Excluded from the Class are

defendants, the officers and trustees of the OppenheimerFunds, Multi-State Trust and the Pennsylvania Fund or any of the other defendants, at all relevant times, members of their immediate families and their legal representatives, heirs, successors or assigns and any entity in which defendants have or had a controlling interest.

42.     The members of the Class are so numerous that joinder of all members is impracticable.  The Fund's shares were actively traded in an efficient market.  While the exact number of Class members is unknown to plaintiffs at this time and can only be ascertained through appropriate discovery, plaintiffs believe that there are hundreds of members in the proposed Class. Record owners and other members of the Class may be identified from records maintained by the OppenheimerFunds or its transfer agent and may be notified of the pendency of this action by mail, using the form of notice similar to that customarily used in securities class actions.  The Fund has billions of outstanding shares.

43.     Plaintiffs' claims are typical of the claims of the members of the Class, as all members of the Class are similarly affected by defendants' wrongful conduct in violation of federal law that is complained of herein.

44.     Plaintiffs will fairly and adequately protect the interests of the members of the Class and have retained counsel competent and experienced in class and securities litigation.

45.     Common questions of law and fact exist as to all members of the Class and predominate over any questions solely affecting individual members of the Class.  Among the questions of law and fact common to the Class are:

        (a)     whether the 1933 Act was violated by defendants' acts as alleged herein;

        (b)     whether the 1940 Act was violated by defendants' acts as alleged herein;

(c)     whether statements made by defendants to the investing public in the Registration Statements/Prospectuses misrepresented material facts about the business, operations and management of the OppenheimerFunds or the Pennsylvania Fund; and

(d)     to what extent the members of the Class have sustained damages and the proper measure of damages.

46.     A class action is superior to all other available methods for the fair and efficient adjudication of this controversy since joinder of all members is impracticable.  Furthermore, as the damages suffered by individual Class members may be relatively small, the expense and burden of individual litigation make it impossible for members of the Class to individually redress the wrongs done to them.  There will be no difficulty in the management of this action as a class action.

## THE FALSE AND DEFECTIVE REGISTRATION STATEMENTS AND PROSPECTUSES

47.     On November 25, 2005, Multi-State Trust filed with the SEC a Registration Statement on Form N-1A, a Prospectus and Statement of Additional Information (collectively the "November 2005 Prospectus"), which became effective November 28, 2005.[1]  The November 2005 Prospectus emphasized the Fund's objective of "preservation of capital."

48.     The November 2005 Prospectus represented the following about the Fund's business and operations:

About the Fund

The Fund's Investment Objective and Principal Investment Strategies

---

[1]     On September 28, 2005, Multi-State Fund filed with the SEC a Registration Statement on Form N-1A substantially similar to the November 2005 Prospectus.

What Is The Fund's Investment Objective?  The Fund seeks as high a level of current interest income exempt from federal and Pennsylvania personal income taxes as is available from municipal securities, consistent with preservation of capital.

What Does the Fund Mainly Invest In?  The Fund invests mainly in Pennsylvania municipal securities that pay interest exempt from federal and Pennsylvania personal income taxes, and from the investment income tax of the school district of Philadelphia.  These securities primarily include municipal bonds (which are debt obligations having a maturity of more than one year when issued), municipal notes (short-term obligations), and interests in municipal leases.  They also may include debt obligations of the governments of certain possessions, territories and commonwealths of the United States or their respective agencies, instrumentalities or authorities if the interest is not subject to Pennsylvania personal income tax or federal personal income tax (in the opinion of bound counsel to the issuer at the time the security is issued).  Most of the securities the Fund buys must be "investment grade" (securities rated in the four highest rating categories of national rating organizations, such as Moody's Investors Services ("Moody's")), although the Fund can hold lower-grade securities as well (sometimes called "Junk Bonds").  Under normal market conditions, the Fund attempts to invest 100% of its assets in municipal securities, and as a fundamental policy invests at least 80% of its net assets (plus borrowings for investment purposes) in Pennsylvania municipal securities.  This includes securities that generate income subject to the alternative minimum tax.

The Fund does not limit its investments to securities of a particular maturity range, and may hold both short- and long- term securities.  However, it currently focuses on longer-term securities to seek higher yields.  These investments are more fully explained in "About the Fund's Investments," below.

|X|  How Do the Portfolio Managers Decide What Securities to Buy or Sell? In selecting securities for the Fund, the portfolio managers look primarily throughout Pennsylvania for municipal securities using a variety of factors that may change over time and may vary in particular cases.  The portfolio managers currently look for:

|_|     Securities that provide high current income

|_|     A wide range of securities of different issuers within the state, including different agencies and municipalities, to spread risk

|_|     Securities having favorable credit characteristics

|_|     Special situations that provide opportunities for value

|_|     Unrated bonds that might provide high income

|_|     Securities of smaller issuers that might be overlooked by other investors and funds

|_|     Special situations of higher rated bonds that provide opportunities for above average income with limited volatility.

|_|     Buying issues across a wide range of municipal sectors, coupons and revenue sources.

The portfolio managers may consider selling a security if any of these factors no longer applies to a security purchased for the Fund.

Who Is the Fund Designed For? The Fund is designed for individual investors who are seeking income exempt from federal and Pennsylvania personal income taxes. The Fund does not seek capital gains or growth. Because it invests in tax-exempt securities, the Fund is not appropriate for retirement plan accounts or for investors seeking capital growth. The Fund is not a complete investment program.

\*      \*      \*

How Risky Is the Fund Overall? The risks described above collectively form the overall risk profile of the Fund and can affect the value of the Fund's investments, its investment performance and the prices of its shares. These risks mean that you can lose money by investing in the Fund. When you redeem your shares, they may be worth more or less than what you paid for them. There is no assurance that the Fund will achieve its investment objective.

The value of the Fund's investments will change over time due to a number of factors. They include changes in general bond market movements, the change in value of particular bonds because of an event affecting the issuer, or changes in interest rates that can affect bond prices overall. The Fund focuses its investments in Pennsylvania municipal securities and is non-diversified. It will therefore be vulnerable to the effects of economic changes that affect Pennsylvania governmental issuers. These changes can affect the value of the Fund's investments and its prices per share. The Fund's focus on longer-term bonds and its use of inverse floaters can cause fluctuations in the Fund's share prices. In the OppenheimerFunds spectrum, the Fund is more conservative than some types of taxable bond funds, such as high yield bond funds, but has greater risks than money market funds.

\*      \*      \*

About the Fund's Investments

The Fund's Principal Investment Policies and Risks. The allocation of the Fund's portfolio among different types of investments will vary over time based on

the Manager's evaluation of economic and market trends.  The Fund's portfolio might not always include all of the different types of investments described in this prospectus.

The Manager tries to reduce risks by selecting a wide variety of municipal investments and by carefully researching securities before they are purchased. However, changes in the overall market prices of municipal securities and the income they pay can occur at any time.  The yield and share prices of the Fund will change daily based on changes in market prices of securities, interest rates and market conditions and in response to other economic events. The Statement of Additional Information contains more detailed information about the Fund's investment policies and risks.

*     *     *

|X| Ratings of Municipal Securities the Fund Buys.  Most of the municipal securities the Fund buys are "investment grade" at the time of purchase.  The Fund does not invest more than 25% of its total assets in municipal securities that at the time of purchase are not "investment-grade."   Securities that are rated below "investment grade" are those rated below "Baa" by Moody's, or lower than "BBB" by Standard & Poor's Rating Services, or comparable ratings by other nationally recognized rating organizations, or (if unrated) judged by the Manager to be comparable to rated investment grade securities.  Rating categories are described in the Statement of Additional Information.  If a security the Fund buys is not rated, the Manager will use its judgment to assign a rating that it believes is comparable to that of a rating organization.

The Manager relies to some extent on credit ratings by nationally recognized rating organizations in evaluating the credit risk of securities selected for the Fund's portfolio.  It also uses its own research and analysis to evaluate risks.  Many factors affect an issuer's ability to make timely payments, and the credit risks of a particular security may change over time.  If the rating of a security is reduced after the Fund buys it, the Fund is not required automatically to dispose of that security.  However, the Manager will evaluate those securities to determine whether to keep them in the Fund's portfolio.

*     *     *

Can the Fund's Investment Objective and Policies Change?  The Fund's Board of Trustees can change non-fundamental policies without shareholder approval, although significant changes will be described in amendments to this Prospectus.  Fundamental policies cannot be changed without the approval of a majority of the Fund's outstanding voting shares.  The Fund's investment objective is a fundamental policy.  Other investment restrictions that are fundamental policies are listed in the Statement of Additional Information.  An investment policy or technique

- 13 -

is not fundamental unless this Prospectus or the Statement of Additional Information says that it is.

\*       \*       \*

|X| Illiquid and Restricted Securities.  Investments may be illiquid because of the absence of an active trading market, making it difficult to value them or dispose of them promptly at an acceptable price. Restricted securities may have terms that limit their resale to other investors or may require registration under federal securities laws before they can be sold publicly. The Fund will not invest more than 15% of its net assets in illiquid securities and cannot invest more than 10% of its net assets in restricted securities.  Certain restricted securities that are eligible for resale to qualified institutional purchasers may not be subject to that limit. The Manager monitors holdings of illiquid securities on an ongoing basis to determine whether to sell any holdings to maintain adequate liquidity.

\*       \*       \*

Other Investment Restrictions

|X|  What Are "Fundamental Policies?"  Fundamental policies are those policies that the Fund has adopted to govern its investments that can be changed only by the vote of a "majority" of the Fund's outstanding voting securities.  Under the Investment Company Act, such a "majority" vote is defined as the vote of the holders of the lesser of:

|_|   67% or more of the shares present or represented by proxy at a shareholder meeting, if the holders of more than 50% of the outstanding shares are present or represented by proxy, or

|_| more than 50% of the outstanding shares.

The Fund's investment objective is a fundamental policy.  Other policies described in the Prospectus or this Statement of Additional Information are "fundamental" only if they are identified as such.  The Fund's Board of Trustees can change non-fundamental policies without shareholder approval.   However, significant changes to investment policies will be described in supplements or updates to the Prospectus or this Statement of Additional Information, as appropriate. The Fund's most significant investment policies are described in the Prospectus.

|X|  Does the Fund Have Additional Fundamental Policies?  The following investment restrictions are fundamental policies of the Fund:

|_|   The Fund cannot invest 25% or more of its total assets in any one industry.  That limit does not apply to securities issued or guaranteed by the U.S.

- 14 -

government or its agencies and instrumentalities or securities issued by investment companies.  Nor does that limit apply to municipal securities in general or to Pennsylvania municipal securities.

49.     On September 27, 2006, the Pennsylvania Fund filed with the SEC a Registration Statement on Form N-1A, a Prospectus and Statement of Additional Information (collectively, the "September 2006 Prospectus").  The September 2006 Prospectus contained substantially similar statements concerning the Fund's objectives and principal investment strategies as the November 2005 Prospectus.

50.     On March 5, 2007, the Pennsylvania Fund filed with the SEC a Registration Statement on Form N-1A, a Prospectus and Statement of Additional Information (collectively, the "March 2007 Prospectus").  The March 2007 Prospectus contained substantially similar statements concerning the Fund's objectives and principal investment strategies as the November 2005 Prospectus and September 2006 Prospectus.

51.     On November 21, 2007, the Pennsylvania Fund filed with the SEC a Registration Statement on Form N-1A, a Prospectus and Statement of Additional Information (collectively the "November 2007 Prospectus").  The November 2007 Prospectus contained substantially similar statements concerning the Fund's objectives and principal investment strategies as the November 2005 Prospectus, September 2006 Prospectus and the March 2007 Prospectus (together with the November 2007 Prospectus, the "Prospectuses").

52.     The Prospectuses were negligently prepared and, as a result, contained untrue statements of material facts or omitted to state other facts necessary to make the statements made not misleading and were not prepared in accordance with the rules and regulations governing their preparation.

53.     Beginning in February 2008, the Pennsylvania Fund's shares declined in tandem with other municipal bond fund shares as the auction rate securities market, which had been an important source of debt financing for municipal bond funds, froze, thus exposing the poor underlying fundamentals of the municipal bond funds' risk management practices.  As a result of these concerns, the Fund's shares began to slide.

54.     Then, beginning in late September 2008, as the credit markets froze up, and continuing through February 2009, the Fund began to acknowledge the serious deterioration in its portfolio.

55.     On October 21, 2008, the Pennsylvania Fund filed with the SEC a Prospectus Supplement which provided additional details and risk disclosures concerning the Pennsylvania Fund's investments and exposure to liquidity risks, borrowing and leverage and Inverse Floaters. The Pennsylvania Fund further disclosed that it was amending its filings to provide the Pennsylvania Fund with greater flexibility to use bank borrowing for both leverage and to raise money to meet future redemptions if necessary.

56.     Throughout the Fall of 2008, the Fund's investment portfolio began to rapidly deteriorate and investors began to realize the extent of the Pennsylvania Fund's exposure to high risk investments.  The Fund collapsed from $11.22 per share at the beginning of September to close as low as $7.42 per share in mid-December 2008, losing over 33% of its value in a few months.

57.     The Fund continues to trade in the $8 to $9 per share range.

58.     The true facts which were omitted from the Registration Statements/Prospectuses issued in connection with the Offerings were as follows:

- 16 -

(a)     The Fund was no longer adhering to its objective of preserving capital, but in an effort to achieve greater yields was pursuing riskier instruments;

(b)     The Fund was no longer adhering to its no-concentration policy;

(c)     The extent of the Fund's liquidity risk due to the illiquid nature of a large portion of the Fund's portfolios, including the Fund's investment in Tobacco and Dirt Bonds, was concealed;

(d)     The extent to which the Fund's portfolio contained unrated securities was concealed;

(e)     The Fund's internal controls were inadequate to prevent defendants from taking on excessive risk or to prevent them from improperly evaluating the credit quality of unrated securities;

(f)     The extent of the Fund's risk exposure to derivatives and other high-risk instruments such as Inverse Floaters was concealed; and

(g)     The extent of the Fund's leverage exposure was misstated.

## COUNT I

### Violations of §11 of the 1933 Act Against All Defendants
### Except Defendants Cottier, Fielding, Loughran and Willis

59.     Plaintiffs incorporate ¶¶1-58 by reference.

60.     This Count is brought pursuant to §11 of the 1933 Act, 15 U.S.C. §77k, on behalf of the Class, against all defendants, except defendants Cottier, Fielding, Loughran and Willis.

61.     This Count does not sound in fraud.  All of the preceding allegations of fraud or fraudulent conduct and/or motive are specifically excluded from this Count.  Plaintiffs do not allege

that the Individual Defendants or the other defendants had scienter or fraudulent intent, which are not elements of this claim.

62.     The Registration Statements for the Offerings were inaccurate and misleading, contained untrue statements of material facts, omitted to state other facts necessary to make the statements made not misleading, and omitted to state material facts required to be stated therein.

63.     The Multi-State Trust is the registrant for the Offerings.   The defendants named herein were responsible for the contents and dissemination of the N1-A Registration Statements.

64.     As issuer of the shares, Multi-State Trust is strictly liable to plaintiffs and the Class for the misstatements and omissions.

65.     None of the defendants named herein made a reasonable investigation or possessed reasonable grounds for the belief that the statements contained in the N1-A Registration Statements were true and without omissions of any material facts and were not misleading.

66.     By reasons of the conduct herein alleged, each defendant violated, and/or controlled a person who violated, §11 of the 1933 Act.

67.     Plaintiffs acquired Fund shares pursuant or traceable to the N1-A Registration Statements for the Offerings.

68.     Plaintiffs and the Class have sustained damages.   The value of the Fund's shares has declined subsequent to and due to defendants' violations.

69.     At the time of their purchases of the Fund's shares, plaintiffs and other members of the Class were without knowledge of the facts concerning the wrongful conduct alleged herein and could not have reasonably discovered those facts prior to late 2008.   Less than one year has elapsed from the time that plaintiffs discovered or reasonably could have discovered the facts upon which

this complaint is based to the time that plaintiffs filed this complaint.  Less than three years has elapsed between the time that the securities upon which this Count is brought were offered to the public and the time plaintiffs filed this complaint.

## COUNT II

### Violations of §12(a)(2) of the 1933 Act Against Defendants OppenheimerFunds, the Multi-State Trust, the Pennsylvania Fund and the Distributor

70.     Plaintiffs repeat and reallege ¶¶1-69 by reference.

71.     This Count is brought pursuant to §12(a)(2) of the 1933 Act on behalf of the Class, against defendants OppenheimerFunds, the Multi-State Trust, the Pennsylvania Fund and the Distributor.

72.     This Count does not sound in fraud.  All of the preceding allegations of fraud or fraudulent conduct and/or motive are specifically excluded from this Count.  Plaintiffs do not allege that the defendants had scienter or fraudulent intent, which are not elements of this claim.

73.     These defendants were sellers and offerors and/or solicitors of purchasers of the shares offered pursuant to the Prospectuses.

74.     The Prospectuses contained untrue statements of material facts, omitted to state other facts necessary to make the statements made not misleading, and omitted to state material facts required to be stated therein.  The actions of solicitation of the defendants named in this claim included participating in the preparation of the false and misleading Prospectuses and participating in marketing the Fund to investors.  The Distributor, as the distributor of the shares in the Offerings, essentially acted as an underwriter.

75.     These defendants owed to the purchasers of Pennsylvania Fund shares, including plaintiffs and other Class members, the duty to make a reasonable and diligent investigation of the statements contained in the Prospectuses, to ensure that such statements were true and that there was no omission to state a material fact required to be stated in order to make the statements contained therein not misleading.  Defendants, in the exercise of reasonable care, should have known of the misstatements and omissions contained in the offering materials as set forth above.

76.     Plaintiffs and other members of the Class purchased or otherwise acquired Pennsylvania Fund shares pursuant and/or traceable to the defective Prospectuses.

77.     Plaintiffs, individually and representatively, hereby offer to tender to defendants those shares which plaintiffs and other Class members continue to own, on behalf of all members of the Class who continue to own such shares, in return for the consideration paid for those shares together with interest thereon.  Class members who have sold their Pennsylvania Fund shares are entitled to rescissory damages.

78.     By reason of the conduct alleged herein, these defendants violated, and/or controlled a person who violated, §12(a)(2) of the 1933 Act.  Accordingly, plaintiffs and members of the Class who hold Pennsylvania Fund shares purchased in the Offerings have the right to rescind and recover the consideration paid for their Pennsylvania Fund shares and hereby elect to rescind and tender their Pennsylvania Fund shares to the defendants sued herein.  Plaintiffs and Class members who have sold their Pennsylvania Fund shares are entitled to rescissory damages.

### COUNT III

#### Violations of §15 of the 1933 Act
#### Against OppenheimerFunds and the Individual Defendants

79.     Plaintiffs repeat and reallege ¶¶1-78 by reference.

80.     This Count is brought pursuant to §15 of the 1933 Act against the Individual Defendants and OppenheimerFunds.

81.     This Count does not sound in fraud.  All of the preceding allegations of fraud or fraudulent conduct and/or motive are specifically excluded from this Count.  Plaintiffs do not allege that the Individual Defendants or the other defendants had scienter or fraudulent intent, which are not elements of this claim.

82.     Each of the Individual Defendants was a control person of the Pennsylvania Fund by virtue of his or her position as a trustee and/or senior officer of the Multi-State Trust.  The Individual Defendants each had a series of direct and/or indirect business and/or personal relationships with other trustees and/or officers and/or major shareholders of the Pennsylvania Fund.

83.     OppenheimerFunds was a control person of the Pennsylvania Fund by virtue of its position as manager for the Fund.

84.     The Individual Defendants and OppenheimerFunds were culpable participants in the violations of §11 of the 1933 Act alleged in the Count above, based on their having signed or authorized the signing of the N-1A Registration Statements/Prospectuses and having otherwise participated in the process which allowed the Offerings to be successfully completed.

## COUNT IV

### Violations of §13(a) of the 1940 Act
### Against Defendants OppenheimerFunds and the Multi-State Trust

85.     Plaintiffs repeat and reallege each of the allegations set forth above as if fully set forth herein.

86.     This Count is asserted against OppenheimerFunds and the Multi-State Trust for violations of §13(a) of the 1940 Act.

87.     The stated investment objective of the Pennsylvania Fund was, primarily, to seek a high level of current income, as is consistent with preservation of capital.  The stated investment objective was a fundamental policy.  Another of the Pennsylvania Fund's fundamental policies involved a no-concentration policy which limited the amount the Pennsylvania Fund could invest in any one industry.

88.     OppenheimerFunds and the Multi-State Trust did not obtain authorization from a majority of the Pennsylvania Fund's outstanding voting shareowners prior to deviating from the Fund's investment policy with respect to its objective.  This deviation exposed investors to increased risk.

89.     This deviation ultimately led to losses by Fund investors.

## PRAYER FOR RELIEF

WHEREFORE, plaintiffs pray for relief and judgment, as follows:

A.      Determining that this action is a proper class action and certifying plaintiffs as Class representatives under Rule 23 of the Federal Rules of Civil Procedure;

B.      Awarding compensatory damages in favor of plaintiffs and the other Class members against all defendants, jointly and severally, for all damages sustained as a result of defendants' wrongdoing, in an amount to be proven at trial, including interest thereon;

C.      Awarding plaintiffs and the Class their reasonable costs and expenses incurred in this action, including counsel fees and expert fees;

D.      Awarding rescission or a rescissory measure of damages; and

E.      Such equitable/injunctive or other relief as deemed appropriate by the Court.

**JURY DEMAND**

Plaintiffs hereby demand a trial by jury.

DATED:  June 12, 2009

DYER & BERENS LLP
ROBERT J. DYER III
JEFFREY A. BERENS


_____
/s/ Jeffrey A. Berens
JEFFREY A. BERENS

682 Grant Street
Denver, CO  80203-3507
Telephone:  303/861-1764
303/395-0393 (fax)
bob@dyerberens.com
jeff@dyerberens.com

COUGHLIN STOIA GELLER RUDMAN &
   ROBBINS LLP
DARREN J. ROBBINS
DAVID C. WALTON
CATHERINE J. KOWALEWSKI
655 West Broadway, Suite 1900
San Diego, CA  92101-3301
Telephone:  619/231-1058
619/231-7423 (fax)
darrenr@csgrr.com
davew@csgrr.com
katek@csgrr.com

HOLZER HOLZER & FISTEL, LLC
COREY D. HOLZER
MICHAEL I. FISTEL, JR.
200 Ashford Center North, Suite 300
Atlanta, Georgia 30338
Telephone:770/392-0090
770/392-0029 (fax)

Attorneys for Plaintiffs

Plaintiffs' Address:
1231 Christy Drive
Johnstown, PA 15904

## CERTIFICATION OF PLAINTIFF
## PURSUANT TO FEDERAL SECURITIES LAWS

The undersigned declares, as to the claims asserted under the federal securities laws, that:

1.    The undersigned has reviewed the complaint and approves its filing.

2.    The undersigned did not purchase the security that is the subject of this action at the direction of counsel or in order to participate in this lawsuit.

3.    The undersigned is willing to serve as a representative party on behalf of a class, including providing testimony at deposition and trial, if necessary.

4.    The undersigned's purchases and sales of Oppenheimer Pennsylvania Municipal Bond Fund shares, during the Class Period, are as follows:

| Ticker | Transaction Date(s) | # of Shares | Buy or Sell | Price/Share |
|--------|---------------------|-------------|-------------|-------------|

See attached Schedule A.

5.    During the three years prior to the date of this certificate, the undersigned has sought to serve or served as a representative party for a class in the following actions under the federal securities laws:  none

6.    The undersigned will not accept any payment for serving as a representative party on behalf of the class beyond the undersigned's pro rata share of any recovery, except such reasonable costs and expenses (including lost wages) directly relating to the representation of the class as ordered or approved by the court.

I declare under penalty of perjury that the foregoing is true and correct.  Executed this 11th day of June                2009.

Daniel Egts

Linda Egts

**Schedule A –**
**Class Period Purchases and Sales of Oppenheimer Pennsylvania**
**Municipal Bond Fund (Egts)**

| Transaction Dates | # of Shares | Buy or Sell | Price/Share ($) |
|---|---|---|---|
| 1/10/2006 | 472.441 | Buy | 12.7 |
| 1/25/2006 | 0.565 | Buy | 12.73 |
| 2/22/2006 | 0.059 | Buy | 12.8 |
| 3/8/2006 | 1.583 | Buy | 12.8 |
| 3/31/2006 | 1.574 | Buy | 12.82 |
| 4/26/2006 | 1.669 | Buy | 12.69 |
| 5/24/2006 | 1.675 | Buy | 12.7 |
| 6/28/2006 | 1.615 | Buy | 12.64 |
| 7/26/2006 | 1.686 | Buy | 12.71 |
| 8/28/2006 | 1.673 | Buy | 12.83 |
| 9/27/2006 | 1.478 | Buy | 12.94 |
| 10/18/2006 | 775* | Buy | 12.89 |
| 10/25/2006 | 1.564 | Buy | 12.88 |
| 11/21/2006 | 2* | Buy | 13.04 |
| 11/22/2006 | 8* | Buy | 13.04 |
| 11/22/2006 | 1.544 | Buy | 13.04 |
| 12/28/2006 | 2* | Buy | 13.03 |
| 12/29/2006 | 1.398 | Buy | 13.03 |
| 1/23/2007 | 2* | Buy | 12.99 |
| 1/24/2007 | 1.644 | Buy | 12.99 |

| 2/20/2007 | 2* | Buy | 13.03 |
|---|---|---|---|
| 2/21/2007 | 1* | Buy | 13.03 |
| 2/21/2007 | 1.562 | Buy | 13.03 |
| 3/27/2007 | 2* | Buy | 13.04 |
| 3/28/2007 | 1.49 | Buy | 13.04 |
| 4/19/2007 | 460.829 | Buy | 13.02 |
| 4/24/2007 | 2* | Buy | 13.03 |
| 4/25/2007 | 1* | Buy | 13.02 |
| 4/25/2007 | 1.57 | Buy | 13.03 |
| 5/22/2007 | 2* | Buy | 12.97 |
| 5/23/2007 | 3.051 | Buy | 12.97 |
| 6/26/2007 | 2* | Buy | 12.82 |
| 6/27/2007 | 1* | Buy | 12.83 |
| 6/27/2007 | 2.963 | Buy | 12.82 |
| 7/24/2007 | 2* | Buy | 12.81 |
| 8/28/2007 | 2* | Buy | 12.2 |
| 8/29/2007 | 1* | Buy | 12.28 |
| 8/29/2007 | 3.156 | Buy | 12.2 |
| 9/25/2007 | 2* | Buy | 12.52 |
| 9/26/2007 | 1* | Buy | 12.51 |
| 9/26/2007 | 3.228 | Buy | 12.52 |
| 10/23/2007 | 2* | Buy | 12.59 |
| 10/24/2007 | 3.257 | Buy | 12.59 |
| 11/27/2007 | 2* | Buy | 12.32 |

| 11/28/2007 | 1* | Buy | 12.3 |
|---|---|---|---|
| 11/28/2007 | 3.202 | Buy | 12.32 |
| 12/28/2007 | 2* | Buy | 12.14 |
| 12/31/2007 | 1* | Buy | 12.16 |
| 12/31/2007 | 3.288 | Buy | 12.14 |
| 1/22/2008 | 2* | Buy | 12.35 |
| 1/24/2008 | 3.49 | Buy | 12.35 |
| 2/26/2008 | 2* | Buy | 11.72 |
| 2/27/2008 | 1* | Buy | 11.58 |
| 2/27/2008 | 3.459 | Buy | 11.72 |
| 3/25/2008 | 3* | Buy | 11.45 |
| 3/26/2008 | 3.735 | Buy | 11.45 |
| 4/22/2008 | 3* | Buy | 11.64 |
| 4/23/2008 | 3.686 | Buy | 11.64 |
| 5/27/2008 | 2* | Buy | 11.76 |
| 5/28/2008 | 1* | Buy | 11.76 |
| 5/28/2008 | 3.514 | Buy | 11.76 |
| 6/24/2008 | 3* | Buy | 11.36 |
| 6/25/2008 | 3.805 | Buy | 11.36 |
| 7/22/2008 | 3* | Buy | 11.16 |
| 7/23/2008 | 1* | Buy | 11.11 |
| 7/23/2008 | 4.073 | Buy | 11.16 |
| 8/26/2008 | 3* | Buy | 11.22 |
| 8/27/2008 | 3.933 | Buy | 11.22 |

| 9/23/2008 | 3* | Buy | 10.58 |
|-----------|------|-----|-------|
| 9/24/2008 | 1* | Buy | 10.51 |
| 10/28/2008 | 4* | Buy | 8.59 |
| 10/29/2008 | 5.342 | Buy | 8.59 |
| 11/25/2008 | 4* | Buy | 8.35 |
| 11/26/2008 | 1* | Buy | 8.33 |
| 11/26/2008 | 5.741 | Buy | 8.35 |

* Does not include fractional shares